Misc.]    Surrogate's Court, Cattaraugus County, July, 1912.

Matter of the Proceedings for the Revocation of Testamentary Letters of Guardianship of the Person and Estate of VIRGINIA M. PEARCE, an Infant.

(Surrogate's Court, Cattaraugus County, July, 1912.)

Guardians — testamentary guardians — appointment of by wills — infants — wills — revocation of letters of guardianship.

> Where upon the probate of the will of a widower leaving him surviving as his sole heir at law and next of kin an infant daughter, letters of testamentary guardianship were duly issued to testator's brother and sister, and it is not shown that the child is not being well and properly cared for in her present relations, the petition of her maternal grandmother, in which her husband joins, for the revocation of said letters, on the ground that the infant had not been provided with any permanent home, will be denied in the absence of any sufficient reason.

PROCEEDINGS for the revocation of letters of guardianship.

M. B. Jewell, for petitioner.

Harry L. Allen, for testamentary guardians.

DAVIE, S. Rounseville W. Pearce, late of the city of Olean, N. Y., died December 5, 1911, leaving him surviving one daughter, Virginia, now of the age of three years, his only heir at law and next of kin. His wife, the mother of said infant, died July 16, 1909. He left a last will and testament, dated February 4, 1911, admitted to probate February 5, 1912, containing the following provision: "I hereby commit the guardianship of my said daughter Virginia M. Pearce, until she shall arrive at the age of twenty-one years, unto Nella Brown of Hornell, N. Y., Marjoria T. Pearce of Hornell, N. Y., and Benjamin I. Pearce of Williams, Arizona; and in case of the death of either of said guardians, then the survivor or survivors shall thereupon be and become the guardians of the person and estate of my said daughter."

Benjamin I. Pearce was a brother of the testator and

Nella and Marjoria his sisters. Directly after the probate of the will Benjamin and Nella duly qualified as such guardians by filing in the surrogate's office the requisite official oath, and letters of testamentary guardianship were thereupon issued to them; the sister Marjoria, not being of full age, has not qualified.

On the 24th day of May, 1912, Margaret Taylorson, the maternal grandmother of the infant, presented a petition in which her husband, Edward Taylorson, joined asking for revocation of such letters of guardianship and for their appointment as guardians of the person and estate of the infant. The grounds set forth in the petition for such revocation were that the infant had not been provided with any permanent home; that she resided a portion of the time with Nella Brown at Hornell and at other times with Benjamin at Coudesport, Penn., and that the petitioners were possessed of sufficient financial ability and of other qualifications to enable them to provide a comfortable and permanent home for the infant.

On the return of the citation issued upon such petition the testamentary guardians appeared specially by their attorney and interposed various preliminary objections relating to the insufficiency of the petition and to the service upon the guardian Benjamin. The determination of these objections was reserved for consideration in connection with the merits upon the final submission of the controversy and in view of the conclusions reached regarding the merits it is unnecessary to now consider them.

The statute provides that a woman is a joint guardian of her children with her husband, with equal powers, rights and duties regarding them; and that upon the death of the father or mother the surviving parent of any living, unmarried child may by deed or by a will duly executed dispose of the custody and tuition of such child during minority or for any less time to any person or persons, but that a guardian so appointed by will shall not execute such trust unless such will be admitted to probate. Dom. Rel. Law, § 81.

It is further provided that where a will containing the appointment of a guardian is admitted to probate the person appointed must, within thirty days thereafter, qualify as prescribed in section 2594 of the Code; otherwise that such appointment shall be deemed to have been renounced. Code Civ. Pro., § 2852.

The qualification required by section 2594 is the execution and filing in the office of the surrogate of the official oath of office as such testamentary guardian. Code Civ. Pro., § 2594.

It is further provided that, upon the petition of the ward or by any relative or other person in his behalf, the Surrogate's Court having jurisdiction to require security from a guardian appointed by will or deed may remove such guardian in any case where a testamentary trustee may be removed as prescribed by law. Code Civ. Pro., § 2858.

Section 2817 of the Code points out with great particularity the causes for the removal of a testamentary trustee, among others the following: "Where, if he was named in a will as executor, letters testamentary would not be issued by him, by reason of his personal disqualification or incompetency."

In applying these various rules the courts have been liberal in their construction in favor of giving courts having jurisdiction large discretion in protecting the interests of the infant. Matter of King, 4 N. Y. St. Rep. 570, 572; Matter of Watson, 10 Abb. N. C. 215; Matter of Waldron, 13 Johns. 418; People ex rel. Bush v. Brown, 35 Hun, 324.

In accepting the trust the guardian assumes the responsibility of providing for the ward suitable care and maintenance during infancy, proper opportunities for education during youth and at all times environments conducive to the physical, mental, moral and social welfare of the ward; and the guardian, who through ignorance or inability fails to meet these demands, should be removed as incompetent to properly execute his trust. Hence the question involved in this proceeding is not one of power or authority but a careful investigation and determination of the facts for the pur-

27

pose of ascertaining whether these testamentary guardians are meeting the requirements.

The evidence shows that the mother of this infant died shortly after the birth of her child; she was then residing with her husband, the testator, at the city of Olean. The mother of the testator immediately after the death of testator's wife went to his home and took charge of his household and cared for the infant until in consequence of the testator's illness it became necessary to discontinue the home; she then with the consent of the father took the infant to her own home in the village of Coudersport, Penn., and ever since has continued to care and provide for the infant. She is a woman of mature age, intelligent and refined; she owns in her own right a comfortable residence at Coudersport; she has become attached to the little girl to whom she has been a mother ever since the child was eleven days old. Her family consists of herself, an unmarried daughter and this infant. She possesses sufficient financial ability and income to comfortably maintain her home and support her family. Not a word of suspicion or criticism is found in the proof of her conduct towards or care of this little girl. Nothing to indicate, directly or inferentially, that she is not a proper person to have the immediate control of the child. The guardian, Nella Brown, is the wife of an attorney, residing with her husband at Hornell; she expressed upon the trial an ardent desire to have the infant reside with her but evidently in view of the fact that her mother has always cared for the infant and become attached to her it is better for the child to remain in the home of her mother, Mrs. Pearce. The other guardian, Benjamin, is a young man, unmarried, who for a period of five years was employed as a drug clerk at the city of Niagara Falls and during that time resided in the home of a married sister at that place. This sister testifies distinctly and unequivocally of his temperance and exemplary conduct while there. After discontinuing his employment at that place he came to the city of Olean making his home with the petitioners and while there, as some of the evidence on behalf of the petitioners tends to show, was somewhat dissolute; but he is now employed in a responsible

capacity at Williams, Arizona, receiving a salary of one hundred and seventy dollars a month from which he contributes fifty dollars a month to his mother for support of herself and family.

The testator having made an appointment of guardians for his child in a most careful and deliberate manner, that is through the instrumentality of a last will and testament, such will having been admitted to probate, and the guardians having qualified in the manner required by law and having entered upon the performance of the trust, the relations, rights and responsibilities thereby created ought not to be disturbed unless the welfare of the infant demands it, and I find nothing in the evidence justifying the conclusion that this child is not being well and properly cared for in her present relations, nor any sufficient reason for a revocation of the guardianship.

A decree will accordingly be entered denying the application for revocation of letters, upon the merits.

Application denied.